**Nos. 25-8045, 26-241**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**SHAWNNA MONTES,**

*Plaintiff-Appellee/Cross-Appellant,*

v.

**PENNEY OPCO LLC, CATALYST BRANDS LLC, AND
SPARC GROUP LLC,**

*Defendants-Appellants/Cross-Appellees.*

On Appeal from The United States District Court
for the Eastern District of Washington
No. 2:25-cv-00281-TOR
The Honorable Thomas O. Rice

---

**DEFENDANTS-APPELLANTS/CROSS-APPELLEES'
OPENING BRIEF**

---

Callie A. Castillo, WSBA No. 38214
Erika O'Sullivan, WSBA No. 57556
Ballard Spahr LLP
1301 2nd Ave, Suite 2800
Seattle, Washington 98101-3808
Telephone: 206.223.7000
Facsimile: 206.223.7107
castilloc@ballardspahr.com
osullivane@ballardspahr.com

*Attorneys for Defendants-
Appellants/Cross-Appellees.*

**Table of Contents**

Page

INTRODUCTION ......................................................................................... 1

STATEMENT OF JURISDICTION ............................................................... 1

STATEMENT OF THE ISSUES ................................................................... 2

STATEMENT OF THE CASE ....................................................................... 2

    A.    Montes's Alleged Facts ................................................................... 2

    B.    Procedural History .......................................................................... 4

        1.    The District Court dismissed Montes' putative class action for lack of Article III standing. .................................................. 4

        2.    This Court rejected Montes's attempt to short circuit the appeal process through summary disposition. ........................... 5

        3.    The present appeal is Montes's third unsuccessful attempt to bring a putative class action against Aéropostale. ................. 6

SUMMARY OF THE ARGUMENT ............................................................. 8

STANDARD OF REVIEW ........................................................................... 9

ARGUMENT ................................................................................................ 9

    A.    An Intangible Statutory Violation, Including an Alleged CEMA Violation, Can Constitute an Injury-In-Fact that Establishes Article III Standing. ............................................................................ 9

    B.    Montes's Alleged Receipt of Misleading Spam E-mail Constitutes a Cognizable Injury Under Article III. ........................... 12

        1.    CEMA protects a consumer's concrete interest to be free from deceptive or misleading information in email subject lines. ............................................................................................ 13

        2.    Montes alleged sufficient injury-in-fact to establish Article III standing. .................................................................... 15

3. The Ninth Circuit has implicitly held, and other Washington District Courts have explicitly held, that an alleged CEMA violation provides sufficient injury for Article III standing. ................................................. 16

C. Montes's Alleged Injury Is Redressable. ........................................... 22

D. Aéropostale's Arguments Regarding Standing Are Consistent with the Arguments Advanced in the Motion to Dismiss Because Preemption and Article III Are Different Standards. ......................... 22

CONCLUSION ............................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Al-Qarqani v. Chevron Corp.*,
8 4th 1018, 1026–27 (9th Cir. 2021) ...................................................25

*Brinton v. Vivint Inc.*,
No. 3:23-CV-06105-TMC, 2024 WL 3688589
(W.D. Wash. Aug. 7, 2024), *appeal dismissed*, No. 24-5240,
2025 WL 2472999 (9th Cir. Mar. 7, 2025) ..................................17, 20

*Cantrell v. City of Long Beach*,
241 F.3d 674 (9th Cir. 2001) ...............................................................10

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) ...............................................................16

*Chin v. Evergreen Freedom Found.*,
764 F. Supp. 3d 924 (C.D. Cal. 2025) .................................................19

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ..........................................................12, 16

*Diamond Alt. Energy, LLC v. EPA*,
606 U.S. 100 (2025)..............................................................................22

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ...............................................................11

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) ...........................................................15

*Fed. Election Com'n v. Akins*,
524 U.S. 11 (1998)................................................................................16

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)............................................................................9, 22

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) ......................................17, 18, 23, 24

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ...............................................24

*Hall v. Smosh Dot Com, Inc.*,
72 F.4th 983 (9th Cir. 2023) ...............................................15

*Harbers v. Eddie Bauer, LLC*,
415 F. Supp. 3d 999 (W.D. Wash. 2019) .........................................17, 19, 20, 21

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)...............................................12, 16

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ...............................................24

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...............................................9, 10

*Lupia v. Medicredit, Inc.*,
8 F.4th 1184 (10th Cir. 2021) ...............................................15

*Lynch v. AML Network Ltd.*,
No. CV 21-3574-GW-RAOX, 2021 WL 4453470
(C.D. Cal. Sept. 27, 2021)...............................................17

*Montes v. Catalyst Brands*
LLC, 2025 WL 3485827 (E.D. Wash. Dec. 4, 2025) (Dkt. X) ..................*passim*

*Montes v. Sparc Grp., Inc.*,
No. 23-35496 (9th Cir. opened July 21, 2023)...............................................7, 8

*Montes v. SPARC Grp. LLC*,
No. 2:22-cv-00201 (E.D. Wash. filed Sep. 15, 2022) .........................................6

*Montes v. SPARC Grp. LLC*,
No. 104162-4 (Apr. 2, 2026) ...............................................8

*Morrison v. National Austl. Bank Ltd.*,
561 U.S. 247 (2010)...............................................25

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
469 F.3d 348 (4th Cir. 2006) ...............................................18, 23

*Robertson v. Catholic Comm. Servs. of W. Wash.*,
No. 22-35965, 2023 WL 3597383 (9th Cir. May 23, 2023) ...............................25

*Robins v. Spokeo, Inc.*,
867 F.3d 1108 (9th Cir. 2017), *cert. denied*,
138 S. Ct. 931 (2018)...................................................................................11, 12, 14

*Scanlan v. Eisenberg*,
669 F.3d 838 (7th Cir. 2012) ...............................................................................11

*Scott v. Bloomingdale's LLC*,
No. GLR-25-3661, 2026 WL 820600 (D. Md. Mar. 25, 2026)..........................18

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015) .................................................................................9

*Silverstein v. Keynetics, Inc.*,
727 F. App'x 244 (9th Cir. Mar. 6, 2018) ...........................................................18

*Silverstein v. Keynetics, Inc.*,
No. LA CV18-04100 JAK (AGRx), 2018 WL 5795776
(C.D. Cal. Nov. 5, 2018)......................................................................................18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)......................................................................................10, 12

*Syed v. M-I, LLC*,
853 F.3d 492 (9th Cir. 2017) ...............................................................................16

*Thompson v. Paul*,
547 F.3d 1055 (9th Cir. 2008) ...............................................................................9

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) ......................................................................10, 11

*Warth v. Seldin*,
422 U.S. 490 (1975)..............................................................................................10

## State Cases

*Cert. from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy*,
567 P.3d 38 (Wash. 2025) ..........................................................13, 14, 15, 21

*Montes v. SPARC Grp. LLC*,
No. 21-2-07436-9 (Wash. Super. Ct. filed Sep. 14, 2021) ...............................6, 7

**Constitutional Provisions**

U.S. Constitution Article III.................................................................................*passim*

**Federal Statutes**

15 U.S.C. §§ 1681–1681 .............................................................................................11, 16

15 U.S.C. § 7707(b)(1).............................................................................................5, 21, 23

18 U.S.C. § 2710(b)(1).......................................................................................................11

28 U.S.C. § 1291 ..................................................................................................................2

28 U.S.C. § 1332(d)(2)........................................................................................................1, 4

47 U.S.C. § 227 ......................................................................................................10, 11, 15

**State Statutes**

Wash. Rev. Code § 19.86.................................................................................*passim*

Wash. Rev. Code § 19.190..............................................................................*passim*

Wash. Sess. Laws 1998 Chapter 149 .......................................................................13

Wash. Sess. Laws 2003 Chapter 137 .......................................................................13

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................5

Fed. R. Civ. P. 9(b) .................................................................................................5

Fed. R. Civ. P. 12(b)(1)....................................................................................2, 5, 9, 25

Fed. R. Civ. P. 12(b)(6).......................................................................................*passim*

**Other Authorities**

Circuit Advisory Committee Note to Rule 27-1(7) ....................................................6

S.B. Rep. on Substitute H.B. 2752 (Feb. 23, 1998)....................................................13

Final B. Rep. on Engrossed Substitute H.B. 2752, 55th Leg., Reg.
    Sess. (Wash. 1998)............................................................................................14

## INTRODUCTION

Defendants-Appellants/Cross-Appellees Catalyst Brands, LLC, SPARC Group, LLC, and Penney OPCO, LLC (collectively "Aéropostale") appeal a discrete legal question: Whether Plaintiff-Appellee/Cross-Appellant Shawnna Montes pleaded injury sufficient to confer Article III standing. She did, and it was error for the District Court to conclude otherwise.

Aéropostale respectfully asks this Court to hold that Montes's stated injury— her receipt of email advertisements containing allegedly deceptive or misleading subject lines—is sufficient to confer standing. Because Montes has standing, this Court should affirm the District Court's dismissal of Montes's claims and entry of judgment on the alternate ground that Montes failed to state a claim upon which relief can be granted. Alternatively, Aéropostale asks the Court to remand the case to the District Court with instructions to exercise its jurisdiction and decide Aéropostale's Motion to Dismiss on the merits.

## STATEMENT OF JURISDICTION

Montes filed her First Amended Class Action Complaint ("FAC") in the Superior Court of Washington for Spokane County. Excerpts of Record (ER) 87– 152 (FAC). Aéropostale removed the action to the U.S. District Court for the Eastern District of Washington under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). ER-153–166 (Notice of Removal). After the District Court dismissed

1

the FAC without prejudice under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and entered judgment, ER-5–15, this Court obtained jurisdiction over Aéropostale's and Montes's timely cross-appeals under 28 U.S.C. § 1291.

STATEMENT OF THE ISSUES

1.      Whether the District Court erred in concluding that Montes failed to allege an injury under the Washington Commercial Electronic Mail Act sufficient to confer Article III standing and dismissing the underlying action for lack of subject matter jurisdiction. **Yes**.

2.      Whether this Court should affirm the District Court's dismissal of Montes's claims and entry of judgment on the alternate ground that she failed to state a claim upon which relief can be granted or remand with instructions for the District Court to consider the merits of Montes's claims and Aéropostale's arguments for dismissal under Rule 12(b)(6). **Yes**.

STATEMENT OF THE CASE

This appeal arises from the District Court's *sua sponte* dismissal of Montes's FAC under Rule 12(b)(1) for lack of Article III standing. Both parties argue that the District Court's ruling was error, but for different reasons. In its Statement of the Case, Aéropostale describes the facts alleged in the FAC and the procedural history of the case.

**A.      Montes's Alleged Facts**

2

Aéropostale is a nationwide clothing retailer that sells its exclusive line of branded clothing online and in brick-and-mortar stores. ER-94.

Montes alleges in the FAC that she and other Washington residents received hundreds of misleading e-mail advertisements from Aéropostale. ER-91, ER-98, ER-100–104, ER-122 –152. Montes brings two causes of action against Aéropostale on behalf of herself and a putative class she seeks to represent. ER-91, ER-108–115. First, she claims that Aéropostale violated Washington's Commercial Electronic Mail Act ("CEMA"), Wash. Rev. Code § 19.190, by sending e-mails "[c]ontaining false or misleading information" in the subject line, *e.g.*, ER-101–102, ER-114–115, and second, she brings a derivative claim for damages under the Washington Consumer Protection Act ("CPA"), ER-108–114

The FAC focuses on three categories of e-mail subject lines, contending that each is deceptive because Aéropostale perpetually offers items at a discount from "fake" higher prices. First, Montes alleges that Aéropostale "advertises perpetual storewide and sitewide 'sales' and percentage-off discounts—typically 50% to 70% off—from [a] self-created list prices for its products." ER-89. According to Montes, these "advertised discounts are false because Aéropostale never or almost never offers or sells its products at their list price." ER-89. Second, Montes alleges that Aéropostale "falsely advertises that the purported savings are for a limited time and indicates that the products will return to the full price after the sale ends, when in

3

fact the advertised savings are perpetual and never-ending." ER-89. Third, Montes states that Aéropostale's BOGO offers are false because "the item is 'discounted' by 50–70% off the list price at all other times," such that Aéropostale "recover[s] all . . . or even more than the cost, of the 'free' item(s) . . . such that the free offer is illusory." ER-89–90. Montes theorizes that "the heart of Aéropostale's marketing plan is to deceive the public" by promoting website-wide and store-wide "sales," in an attempt to induce purchases, that are actually "perpetual and never-ending" in duration. ER-89–90, ER-95–105, ER-111.The FAC lists 666 subject lines that Montes claims violated CEMA for these reasons. ER-104, ER-122–152.

Montes seeks a permanent injunction against Aéropostale, an award of "statutory damages of $500" for each e-mail found to have violated CEMA, treble damages under the CPA, as well as costs and attorney fees. ER-115.

**B.     Procedural History**

**1.     The District Court dismissed Montes' putative class action for lack of Article III standing.**

Montes initially filed her putative class action against Aéropostale in Spokane County Superior Court. ER-88–116; ER-153–165 (Notice of Removal).

On August 1, 2025, Aéropostale removed the action to the Eastern District of Washington under CAFA. ER-153–165. Aéropostale established that the parties had diversity, identified that it had sent marketing e-mails to at least 100 Washington residents, and asserted that the damages based on that number times the face value

4

of Montes's alleged statutory CEMA violations would exceed $5,000,000 without including her claim for treble damages under the CPA or attorneys' fees. *Id.* Aéropostale also moved to dismiss the FAC on the grounds that: (1) Montes's CEMA claim was preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act, 15 U.S.C. § 7707(b)(1); (2) the FAC failed to satisfy the pleading requirements of Rules 8 and 9(b); and (3) Montes's CPA claim failed because it was premised on her preempted CEMA claim. ER-58–86 (Mot. to Dismiss); ER-23–37 (Reply Br.).

The District Court dismissed Montes's claims without prejudice. ER-15 (*Montes v. Catalyst Brands* LLC, 2025 WL 3485827 (E.D. Wash. Dec. 4, 2025) (Dkt. 22). The District Court engaged in a *sua sponte* analysis of Article III standing and concluded that Montes failed to allege that she suffered a concrete injury and a redressable claim—an issue not raised or briefed by either party. ER-9–15. The District Court dismissed the action under Rule 12(b)(1) and did not address Aéropostale's motion under Rule 12(b)(6). See ER-5–15.

Montes moved for reconsideration asking the District Court to remand the case to state court instead of dismissing it without prejudice. ER-18–22 (Mot. for Recon.). The District Court denied that motion. ER-16–17 (Or. Deny. Recon.). It then entered judgment. ER-4 (Judgment).

> **2. This Court rejected Montes's attempt to short circuit the appeal process through summary disposition.**

Aéropostale appealed the District Court's holding that Montes lacked Article III standing. ER-167–168 (Defs. Notice of Appeal). Montes cross-appealed, ER-172–173, and then filed a Motion for Summary Disposition, alleging that the District Court erred by entering judgment against Montes, rather than remanding the action back to state court, Dkt. 18 (Mot. re Post-Judgment); *see also* ER-180–181 (Docket). Aéropostale opposed the Motion because the question of federal jurisdiction must be decided first. Dkt. 19. On February 27, 2026, this Court denied Montes's Motion for Summary Disposition, lifted the stay of proceedings, and ordered that the parties' cross-appeals proceed. Dkt. 27 (Or. Re Post-Judgment Mot.); *see also* Dkt. 9 (Stay Or.).

### 3. The present appeal is Montes's third unsuccessful attempt to bring a putative class action against Aéropostale.

Prior to initiating the present action, Montes filed two other actions against Aéropostale, asserting claims under the CPA regarding Aéropostale's pricing of its products. Motion for Judicial Notice ("MJN"), Ex. 1 (*Montes v. SPARC Grp. LLC*, No. 21-2-07436-9 (Wash. Super. Ct. filed Sep. 14, 2021)); *id.*, Exs. 2-4 (*Montes v. SPARC Grp. LLC*, No. 2:22-cv-00201 (E.D. Wash. filed Sep. 15, 2022)).[1] Montes

---

[1] Aéropostale filed a motion requesting that the Court take judicial notice of the pleadings and filings in the public record from related actions and consider them in connection with this appeal. The case dockets and relevant pleadings and filings are attached as exhibits to the Motion to Take Judicial Notice. *See* Circuit Advisory Committee Note to Rule 27-1(7) ("The parties may refer to the materials the request

alleged that Aéropostale violated the CPA by engaging in a widespread "false discounting" scheme in which Aéropostale "advertised perpetual or near perpetual website-wide and store-wide 'sales' and percentage-off discounts in order to trick its customers and the general public into thinking that its products were 'on sale'." MJN, Ex. 2 (2022 Complaint or the "pricing case").

Montes voluntarily dismissed the claims in her first action. *See* MJN, Ex. 5 (*Montes v. SPARC Group LLC*, No. 21-2-07436-9 (Wash. Super. Ct. Mar. 18, 2022) (Or. Grant. Pls.'s Mot. to Voluntarily Dismiss Pl. Shawna Montes' Claims Only). After filing her second action in the Eastern District of Washington, the District Court dismissed Montes's 2022 Complaint with prejudice after concluding that Montes failed to allege an injury under the CPA. MJN, Ex. 6 at 4–11 (Order Grant. Mot. to Dismiss). Montes appealed to this Court. *See Montes v. Sparc Grp., Inc.*, No. 23-35496 (9th Cir. opened July 21, 2023).

After the parties completed briefing and argument, the Court certified the following question to the Washington Supreme Court:

> When a seller advertises a product's price, coupled with a misrepresentation about the product's discounted price, comparative price, or price history, does a consumer who purchases the product because of the misrepresentation suffer an 'injur[y] in his or her business or property' under Wash. Rev. Code §§ 19.86.020 and 19.86.090 if the consumer pays the advertised price?

---

addresses with the understanding that the Court may strike such references and related arguments if it declines to grant the request.").

*Id.*, Ex. 7 (No. 23-35496, 136 F. 4th 1168, 1174 (9th Cir. 2025) (Or. Cert. Question at 3–5) (alteration in original). On April 2, 2026, the Washington Supreme Court answered this question in the negative.[2] MJN, Ex. 8 (*Montes v. SPARC Grp. LLC*, No. 104162-4 (Apr. 2, 2026)). The matter will now return to this Court for further decision.

## SUMMARY OF THE ARGUMENT

Montes's factual allegations, taken as true for purposes of this foundational, jurisdictional inquiry, state an injury under CEMA that is sufficient to establish Article III standing. Although Montes does not allege reliance or that she suffered actual damages, as required to survive CAN-SPAM preemption, her FAC nevertheless asserts the purported injury that the Washington Legislature intended to guard against under CEMA: the right to be free of deceptive information. To be sure, Aéropostale maintains that Montes's action is entirely meritless, is preempted by federal law, and should be dismissed under Rule 12(b)(6). Nevertheless, removal

---

[2] The Washington Supreme Court concluded that "[n]o. . . . a consumer does not suffer an injury [under the CPA] in 'her business or property' when she purchases—and obtains and keeps—the fungible product she sought to obtain but does so because the seller misrepresented the product's price history." MJN, Ex. 8 at 2. This reading affirms Aéropostale's position that Montes has not, and cannot, allege that she suffered independent injury under the CPA. However, the Washington Supreme Court's ruling does not foreclose the District Court's ability to exercise jurisdiction over Montes's claims in either case. Indeed, by granting Aéropostale's Motion to Dismiss in the pricing case, the District Court implicitly held that it had jurisdiction. So too did this Court.

was proper as the District Court had, and this Court has, jurisdiction to decide the case on its merits. This Court should affirm dismissal of Montes's claims under Rule 12(b)(6).

Alternatively, the case should be remanded to the District Court with instructions to exercise its subject matter jurisdiction and decide Aéropostale's Motion to Dismiss on the merits under the Rule 12(b)(6) standard.

## STANDARD OF REVIEW

This Court reviews de novo "dismissals under Rules 12(b)(1) and 12(b)(6)." *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 333 (9th Cir. 2015) (citation omitted). This Court may affirm on any basis supported by the record. *Thompson v. Paul*, 547 F.3d 1055, 1058-59 (9th Cir. 2008).

## ARGUMENT

**A.    An Intangible Statutory Violation, Including an Alleged CEMA Violation, Can Constitute an Injury-In-Fact that Establishes Article III Standing.**

To have standing to sue in federal court under Article III of the U.S. Constitution, a plaintiff must plead, and ultimately prove, three elements. A plaintiff must have (i) suffered an "injury in fact"; (ii) that is "fairly traceable" to the challenged action of the defendants; and (iii) that is likely to be redressed by a favorable outcome of the litigation. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S.

9

555, 560–61 (1992). For purposes of this appeal, Aéropostale focuses on Montes's alleged injury and the redressability of her injury, which the District Court concluded were not plausibly pleaded. *See* ER-6–14 (*Montes*, 2025 WL 3485827, at \*2–4). At the pleading stage, courts look to the complaint to determine whether the plaintiff has alleged facts that, if proven, would establish injury-in-fact and the other Article III standing requirements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (*Spokeo I*); *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

The Legislative Branch "is well positioned to identify intangible harms that meet minimum Article III requirements," and "its judgment is . . . instructive and important." *Spokeo I*, 578 U.S. at 331. While "Article III standing requires a concrete injury even in the context of a statutory violation," a legislature "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)); *see also Warth*, 422 U.S. at 514 ("The actual or threatened injury required by Art[icle] III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing[.]'") (citation omitted); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (concluding that the legislature "has some permissible role in elevating concrete, de facto injuries previously inadequate in law 'to the status of legally cognizable injuries'" and recognizing standing for a claim brought under Telephone Consumer

10

Protection Act, or "TCPA," 47 U.S.C. § 227) (citing *Spokeo I*, 578 U.S. at 341); *see also Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) (recognizing "state law can create interests that support standing in federal courts" if, for example, the statute "provided for monetary relief to a citizen suing under it") (citation omitted).

"[S]ome statutory violations, alone, do establish concrete harm." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112-13 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931 (2018) (*Spokeo II*) (concluding that a consumer's alleged injuries under Fair Credit Reporting Act, or "FCRA," 15 U.S.C. §§ 1681–1681, were sufficiently concrete to satisfy injury-in-fact requirement); *see also Scanlan v. Eisenberg*, 669 F.3d 838, 845 (7th Cir. 2012) ("[T]he actual or threatened injury required under Article III can be satisfied solely by virtue of an invasion of a recognized state-law right."). For instance, where a statute is a "substantive provision that protects concrete interests," a plaintiff need not plead any additional harm beyond a violation of the statute to obtain standing. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982–84 (9th Cir. 2017) (analyzing claims brought under Video Privacy Protection Act or "VPPA," 18 U.S.C. § 2710(b)(1), and holding that the VPPA "identifies a *substantive* right to privacy that suffers *any time* a video service provider discloses otherwise private information" and concluding an alleged statutory violation confers Article III standing) (emphasis in original); *see also Van Patten*, 847 F.3d at 1043 (concluding

11

receipt of unsolicited text messages and phone calls presented "precise harm" that Congress sought to protect under TCPA).

And even where a statute does not grant a substantive right, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo I*, 578 U.S. at 342. In such a case, a plaintiff need not allege "any additional harm" beyond what the legislature identified in enacting the statute. *Id.* The only requirement is that a plaintiff allege that she was harmed by a violation of the statute in order to satisfy the injury in fact element for standing. *Id.*

Ultimately, the Court must ask: (1) whether the statutory provisions at issue were established to protect the plaintiff's concrete interests and, if so, (2) whether the specific violations alleged constitute actual harm, or present a material risk of harm, to such interests. *Spokeo II,* 867 F.3d at 1113 (citing *Spokeo I*, 578 U.S. at 341–42). The answer to both questions establishes that Montes has Article III standing.

**B.     Montes's Alleged Receipt of Misleading Spam E-mail Constitutes a Cognizable Injury Under Article III.**

The right to truthful, accurate information establishes Article III standing when a statute creates a substantive entitlement to receive accurate information, and a plaintiff alleges deprivation of that statutory right. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966–67 (9th Cir. 2018) (alleged false advertising evaded statutory right to receive truthful information under state consumer protection laws,

12

and thus was sufficient to establish Article III standing); *see also Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373–74 (1982) (Congress "conferred on all 'persons' a legal right to truthful information about available housing" under Fair Housing Act, and "plainly omitted" a "*bona fide*" requirement for standing when it explicitly required one elsewhere in the same section of the fair housing statute.) Montes established Article III standing when she alleged that her right to receive truthful, nondeceptive information under CEMA was violated when Aéropostale sent her advertising emails that allegedly contain false and deceptive subject lines. The District Court erred in concluding otherwise.

**1. CEMA protects a consumer's concrete interest to be free from deceptive or misleading information in email subject lines.**

The Washington Legislature enacted CEMA to protect consumers and internet service providers against a wide range of harms associated with spam e-mail and text messages. *See* Wash. Sess. Laws 1998 ch. 149 s. 1 (uncodified intent statement); Wash. Sess. Laws 2003 ch. 137 s. 1 (uncodified intent statement). Among its requirements, CEMA prohibits sending an e-mail to Washington residents that "contains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b).

The Washington Attorney General's office "request[ed] this legislation," in part because of the rise in consumer complaints relating to spam. *See* S.B. Rep. on Substitute H.B. 2752 (Feb. 23, 1998) at 1; *Cert. from U.S. Dist. Ct. for W. Dist. of*

13

*Wash. in Brown v. Old Navy*, 567 P.3d 38, 41 (Wash. 2025) ("*Brown v. Old Navy Cert.*") ("The legislature was concerned about the added cost consumers faced when a barrage of commercial e-mails meant that they paid internet providers for time spent sifting through in-boxes cluttered by spam.") (citing Final B. Rep. on Engrossed Substitute H.B. 2752, at 1, 55th Leg., Reg. Sess. (Wash. 1998)); *see also Brown v. Old Navy Cert.*, 567 P.3d at 49 (Madsen, J. dissenting) ("Lawmakers noted that sending e-mails consumed resources: electronic storage and memory space, delays in receipt of an expected message, and slowing down network speeds. . . . [and] many consumers used Internet that charged in increments of time; thus spam recipients had to pay to download messages."). The Washington Supreme Court further recognized that "CEMA sought to give consumers relief from commercial spam e-mail by requiring accuracy and truthfulness in the subject lines of such e-mails" and by imposing monetary penalties for any violation. *Brown v. Old Navy Cert.*, 567 P.3d at 42, 45. Under CEMA, the injury *is* receiving an e-mail containing false or misleading information. *Id.* at 42.

CEMA thus protects consumers' substantive interests in receiving true and accurate information. CEMA also imposes procedural requirements on e-mail (i.e. that they contain subject lines that are truthful and not misleading) that if violated subjects the person sending the e-mail to strict statutory civil penalties. *Brown v. Old Navy Cert.*, 567 P.3d at 42. The statute was enacted to protect consumers' concrete

14

interests. *See Spokeo II*, 867 F.3d 1108.

**2.  Montes alleged sufficient injury-in-fact to establish Article III standing.**

Montes alleges that her rights under CEMA were violated when Aéropostale sent her and potential customers hundreds of e-mails containing false or misleading e-mail subject lines attempting to induce purchases. ER-89–90, ER-94–105. Montes further alleges that Aéropostale advertised perpetual discounts that are "always false" and that mislead customers about the limited-time savings and about the value of offered discounts such as "free" or "BOGO" in the subject line. ER-89–90, ER-95–96, ER-98–99. These allegations, if proven true, are the concrete harm the Washington Legislature intended to protect and remedy when enacting CEMA: the right to be free from receipt of deceptive information and conversely the right to receive information that is true and accurate. *See Brown v. Old Navy Cert.*, 567 P.3d at 45.

Federal courts have held that the mere receipt of unwanted marketing material is sufficient to satisfy the low bar for Article III standing. *See Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) ("The owner and subscriber of the phone suffers a concrete, *de facto* injury when their right [under the TCPA] to be free from such communications is violated—even if the communications are intended for or solicited by another individual[.]"); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021) ("Though a single phone call may not intrude to the degree required

15

at common law, that phone call poses the same *kind* of harm recognized at common law—an unwanted intrusion into a plaintiff's peace and quiet."); *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021) ("[W]asted time" is a concrete injury under Article III). Courts have also held that the right to truthful information is a sufficiently concrete injury to confer standing. *See Fed. Election Com'n v. Akins*, 524 U.S. 11, 21 (1998) (alleged violation of FECA disclosure requirements established standing); *Havens Realty Corp.*, 455 U.S. at 374–75 (alleged receipt of false information in violation of FHA established standing); *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017) (alleged violation of job application disclosure requirements in violation of FCRA established standing); *Davidson*, 889 F.3d at 966–67 (alleged violation of California consumer protection laws against false advertising established standing).

Montes claims that the challenged email advertisements by Aéropostale are false and deceptive in violation of her rights under CEMA to receive truthful and accurate information. If the mere receipt of unwanted, non-deceptive calls or text messages establishes standing, and the receipt of deceptive information establishes standing, then the receipt of false and deceptive email marketing surely does as well.

**3.      The Ninth Circuit has implicitly held, and other Washington District Courts have explicitly held, that an alleged CEMA violation provides sufficient injury for Article III standing.**

Federal courts must satisfy themselves of their jurisdiction "any time" a matter

is before the court. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011). The District Court below erred in concluding that Montes's allegations were insufficient to establish Article III standing because Montes did not allege "an economic loss, detrimental reliance, or any comparable injury" and because she consented to receive emails from Aéropostale. ER XX (Order at 7–9). But this conclusion misapprehends the harm that CEMA was intended to prevent. A potential customer who solicits or otherwise consents to receive email advertising nevertheless retains her right to be free of deceptive or misleading advertising and to only receive advertising that is truthful.

This Court in fact has already implicitly found Article III standing for an alleged injury under CEMA in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009). So too, have other federal courts both explicitly and implicitly. *See Harbers v. Eddie Bauer, LLC,* 415 F. Supp. 3d 999, 1007-09 (W.D. Wash. 2019); *Brinton v. Vivint Inc.*, No. 3:23-CV-06105-TMC, 2024 WL 3688589, at *3 (W.D. Wash. Aug. 7, 2024), *appeal dismissed*, No. 24-5240, 2025 WL 2472999 (9th Cir. Mar. 7, 2025); *see also Lynch v. AML Network Ltd.*, No. CV 21-3574-GW-RAOX, 2021 WL 4453470, at *5 (C.D. Cal. Sept. 27, 2021) (denying remand of claims filed under California's CEMA analogue, concluding that plaintiff alleged a concrete injury sufficient to invoke Article III standing).

In *Virtumundo*, the district court dismissed the plaintiff's action, concluding

17

that he lacked statutory standing to pursue a private action under CAN-SPAM for purported receipt of misleading e-mails and that his related CEMA claim failed both as a matter of law and based on preemption. 575 F.3d at 1047. The Court of Appeals first evaluated whether the plaintiff had alleged sufficient facts to bring a private action under CAN-SPAM, ultimately concluding he did not. *Id.* at 1051–54. The Court of Appeals then analyzed the merits of the CEMA claim, agreeing that the plaintiff had "failed to identify or describe any specific e-mail or subject line text" that violated the statute. *Id.* at 1058. The Court of Appeals went on to conclude that the plaintiff's CEMA claim was preempted by the CAN-SPAM Act because nothing contained in the plaintiff's claim amounted to "falsity or deception." *Id.* at 1064. In deciding these issues, the Court of Appeals never questioned whether the plaintiff lacked Article III standing to bring the CEMA claim in the first instance.

Other courts applying CEMA analogs have likewise implicitly found standing and decided claims on their merits. *E.g.*, *Silverstein v. Keynetics, Inc.*, 727 F. App'x 244, 245–46 (9th Cir. Mar. 6, 2018) (affirming dismissal of claims brought under California's anti-spam law); *Silverstein v. Keynetics, Inc.*, No. LA CV18-04100 JAK (AGRx), 2018 WL 5795776, at *10 (C.D. Cal. Nov. 5, 2018) ("Because the district court and the Ninth Circuit reached decisions on the merits of Plaintiff's claim, each made an implicit finding of standing under Article III. . . . Plaintiff has Article III standing to pursue the claims in this action."); *Omega World Travel, Inc. v.*

18

*Mummagraphics, Inc*., 469 F.3d 348, 354 (4th Cir. 2006) (concluding the CAN-SPAM Act preempted Oklahoma's CEMA equivalent); *Scott v. Bloomingdale's LLC*, No. GLR-25-3661, 2026 WL 820600, at *2 (D. Md. Mar. 25, 2026) (dismissing Maryland Commercial Electronic Mail Act claim under Fed. R. Civ. P. 12(b)(6)); *Chin v. Evergreen Freedom Found.*, 764 F. Supp. 3d 924, 934 (C.D. Cal. 2025) ("Plaintiffs' allegations of [California's anti-spam law] statutory violations are injuries in fact sufficient to confer Article III standing.").

While not binding on this Court, other Washington district courts have *explicitly* concluded that alleged injuries identical to those alleged by Montes here confer standing. In *Harbers v. Eddie Bauer, LLC*, a plaintiff (represented by Montes's same counsel) brought a class action for statutory damages only, alleging a retailer violated CEMA by sending e-mails with misleading subject lines. 415 F. Supp. 3d at 1001–02. Following removal, the plaintiff claimed she lacked standing and sought remand. But the court disagreed and held that the receipt of allegedly deceptive commercial e-mails in violation of CEMA alone—without more— conferred Article III standing. *Id*. at 1008–11.

The *Harbers* court reasoned: (1) CEMA was "enacted to protect concrete interests"; (2) the plaintiff alleged a violation of her substantive right "to be free from deceptive commercial e-mails, which suffers anytime a prohibited [deceptive] message is transmitted,"; and (3) that this "satisfies the concreteness requirement,

19

*even absent additional allegations of harm*." *Id*. at 1008–09 (emphasis added). The *Harbers* court went on state that even if the plaintiff "allege[d] only a procedural CEMA violation," the alleged CEMA violation would nonetheless be "sufficient to confer Article III standing." *Id*. at 1009–10. Because the plaintiff's receipt of deceptive e-mails "pose[s] a risk to [her] interest in being free from the nuisance and loss of productivity" caused sorting through emails with deceptive subject lines, the court found that she "need not allege any additional harm beyond the CEMA violations to allege a concrete injury-in-fact." *Id.* at 1010–11 (denying remand).

Other district courts have followed *Harbers*. In *Brinton v. Vivint Inc.,* the court cited *Harbers* and noted that it "agree[d] with the other district courts that have found receipt of spam e-mails to be a concrete injury that establishes Article III standing." No. 3:23-CV-06105-TMC, 2024 WL 3688589, at \*3 (W.D. Wash. Aug. 7, 2024), *appeal dismissed*, No. 24-5240, 2025 WL 2472999 (9th Cir. Mar. 7, 2025). The *Brinton* court noted that in passing CEMA, the Washington Legislature recognized that spam e-mails cause various harms, including "lost productivity and resources, annoyance, consumption of valuable digital storage space and financial costs, in addition to the foundational injuries to privacy and freedom from nuisance." *Id*. (cleaned up).

The District Court's rejection of *Harbers* and its logic in this case is wrong. *See* ER-10–13 (*Montes*, 2025 WL 3485827, at \*3). The District Court incorrectly

20

concluded that, because Montes did not allege that Aéropostale e-mails were unwanted or unsolicited, her receipt of these e-mails was not "an invasion of privacy or any similar injury" rising to the level of concrete harm. *Id.* But CEMA does not prohibit the receipt of *all* unwanted emails—nor could it, given that CAN-SPAM preempts any restrictions on commercial email except those prohibiting "false or misleading conduct." 15 U.S.C. § 7707(b)(1); *see also* Section D, *infra*. Instead, CEMA only prohibits e-mail with false and misleading subject lines. It is the receipt of *those* e-mails that Montes alleges are unwanted. *E.g.*, ER-105. As the *Harbers* court reasoned, alleging the receipt of a misleading or "deceptive commercial e-mail" (or in this case, allegedly hundreds of deceptive e-mails) comports with the legislative intent behind CEMA in penalizing untruthful or misleading e-mails.[3] 415 F. Supp. 3d at 1005, 1008–09. This Court should likewise find that Montes properly alleged Article III standing.

*   *   *   *

While Aéropostale contends that Montes cannot sustain her CEMA claim on the merits, Aéropostale agrees that the basis of her allegations—i.e., receiving false

---

[3] This reading is also consistent with the Washington Supreme Court's decision in *Brown v. Old Navy Cert*. While obviously not analyzing Article III standing, the Washington Supreme Court reiterated the legislative purpose behind CEMA and the scope of an injury under CEMA: "CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the e-mail that violates CEMA." 567 P.3d at 45.

21

or misleading e-mail advertisements rather than truthful marketing—is sufficient to establish Article III standing. This Court should conclude that Montes pleaded a concrete injury-in-fact sufficient to confer Article III standing.

**C.      Montes's Alleged Injury Is Redressable**.

The next prong of the standing analysis is whether an injury is likely to be redressed by a favorable outcome of the litigation. *Friends of the Earth, Inc.*, 528 U.S. at 180–81. "[T]o show redressability, the plaintiff must simply 'show a predictable chain of events' that would likely result from judicial relief and redress the plaintiff's injury." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 121 (2025).

The District Court below incorrectly concluded that because Montes failed to allege harm, "it follow[ed] that [Montes] does not allege any imminent threat or ongoing actual harm either." ER-14 (*Montes*, 2025 WL 3485827, at *4). But, as shown in this brief, Montes *does* state an injury conferring Article III standing. And Montes seeks redress in the form of statutory penalties and injunctive relief, which are easily ordered and enforced by a court of competent jurisdiction (here, the District Court). ER-115. Accordingly, Montes's Article III injury is redressable, and this prong of the standing inquiry is met.

**D.      Aéropostale's Arguments Regarding Standing Are Consistent with the Arguments Advanced in the Motion to Dismiss Because Preemption and Article III Are Different Standards.**

Finally, Aéropostale's invocation of the courts' jurisdiction in the Notice of Removal, ER-153–163, comports with the preemption argument advanced in Aéropostale's Motion to Dismiss. Aéropostale's central argument is that CAN-SPAM preempts Montes's claims, ER-73–84. Specifically, Aéropostale contends that because Montes failed to allege elements of traditional fraud claims (e.g. materiality and reliance), that her claims, as pleaded, fall outside the limited, narrow exception to CAN-SPAM preemption. *See* ER-80–84.

States are permitted to enforce a "statute, regulation, or rule prohibit[ing] *falsity* or *deception* in any portion of a commercial electronic mail message . . . ." 15 U.S.C. § 7707(b)(1) (emphasis added); *Virtumundo Inc.*, 575 F.3d at 1061. Under this exemption, only "traditionally tortious" theories of state law liability survive; all other theories of liability based on commercial email transmission are expressly preempted. *Virtumundo Inc.*, 575 F.3d at 1062–63. This narrow reading of CAN-SPAM's safe harbor is supported by the text itself:

> Reading 'falsity' in conjunction with 'deception,' which connotes a type of tort action based on misrepresentations, we are likewise persuaded that the exception language, read as Congress intended, refers to 'traditionally tortious or wrongful conduct.'

*Id.* (citing *Omega*, 469 F.3d at 354).

Thus, to survive CAN-SPAM preemption, Montes must show that her claims are consistent with traditional "torts involving misrepresentations." "Traditional claims for fraud or misrepresentation" require more than the mere receipt of a

23

deceptive statement; they *also* require proof of numerous additional elements, including "materiality," "reliance" on the alleged misstatement, and "actual damages" due to such reliance. ER-75–83 (*see authority cited*). As argued by Aéropostale, because Montes failed to allege that she saw or relied upon any of the e-mails, or was injured due to such reliance, her claims cannot satisfy the elements of a traditional misrepresentation tort and are preempted by CAN-SPAM. (*See id.*)

But the CAN-SPAM preemption analysis does not foreclose Article III standing. Under Article III jurisprudence, Montes's alleged receipt of voluminous, deceptive e-mail containing misleading email subject lines, rather than true and correct advertising, constitutes a cognizable injury under Article III. *See supra* Section B(1)–(3). These disparate results do not evidence a logical inconsistency in Aéropostale's submissions. Instead, they reflect substantive differences in: (a) the type of injury required to establish Article III standing, e.g. the right to receive true and accurate information, on the one hand, and (b) the injury required to survive federal preemption, on the other, *e.g.* material reliance on the statements causing damage. The injury required under Article III in fact often diverges from the injury required to establish an underlying cause of action. *E.g.*, *Jones v. Ford Motor Co.*, 85 F.4th 570, 573–75 (9th Cir. 2023) (declining remand because "the injury-in-fact prong of Article III standing and the merits of a [Washington Privacy Act] claim are separate inquiries" and reasoning that "failure to plead the more specific or more

24

demanding statutory injury shows a failure to state a claim, not a failure to establish standing"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1053 (S.D. Cal. 2023) (Article III standing was satisfied but plaintiff "fail[ed] to allege a cognizable injury under [California's Unfair Competition Law]" because the UCL "demands more: a plaintiff must show 'economic injury.'"). Although Montes's alleged injuries are insufficient to survive preemption, they confer standing under Article III.

This Court can, and should, affirm the District Court's dismissal of Montes's claims. But it should do so under Rule 12(b)(6) and hold that Montes, in her third lawsuit under the same set of facts, failed to state a plausible claim for relief against Aéropostale. *See Al-Qarqani v. Chevron Corp.*, 8 4th 1018, 1026–27 (9th Cir. 2021) ("The Supreme Court has held that we may affirm a district court's judgment if the court mistakenly dismisses a claim for lack of subject-matter jurisdiction rather than for failure to state a claim—remand in those circumstances is 'unnecessary' because it 'would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion.'") (citing *Morrison v. National Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010)); *Robertson v. Catholic Comm. Servs. of W. Wash.*, No. 22-35965, 2023 WL 3597383, 1 n.1 (9th Cir. May 23, 2023) ("Although the district court dismissed the action under Rule 12(b)(1) for lack of subject-matter jurisdiction, we affirm dismissal under Rule 12(b) for failure to state a claim.").

25

## CONCLUSION

Montes pleaded Article III standing. The District Court erred in concluding otherwise. Aéropostale respectfully asks this Court to affirm dismissal of Montes's action against Aéropostale on the alternative ground that Montes failed to state a claim for relief under Rule 12(b)(6). Alternatively, Aéropostale asks the Court to remand the case to the District Court with instructions to exercise its subject matter jurisdiction and to decide Aéropostale's Motion to Dismiss on the merits.

Date: April 27, 2026

BALLARD SPAHR LLP


By:  *s/Callie A. Castillo*
     Callie A. Castillo, WSBA No. 38214
     Erika O'Sullivan, WSBA No. 57556
     Ballard Spahr LLP
     1301 Second Avenue, Suite 2800
     Seattle, Washington 98101
     Telephone: 206.223.7000
     Facsimile: 206.223.7107
     castilloc@ballardspahr.com
     osullivane@ballardspahr.com

*Attorneys for Defendant-Appellant/Cross-Appellees*

26

**STATEMENT OF RELATED CASES**

Counsel for Defendants-Appellants/Cross-Appellees is unaware of any currently pending cases within the meaning of Cir. R. 28-2.6.

Date: April 27, 2026

BALLARD SPAHR LLP

By: *s/Callie A. Castillo*
Callie A. Castillo, WSBA No. 38214
Erika O'Sullivan, WSBA No. 57556
Ballard Spahr LLP
1301 Second Avenue, Suite 2800
Seattle, Washington 98101
Telephone: 206.223.7000
Facsimile: 206.223.7107
castilloC@ballardspahr.com
OSullivanE@ballardspahr.com

*Attorneys for Defendants-Appellants/Cross-Appellees*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s): 25-8045, 26-241**

I am the attorney or self-represented party.

**This brief contains 6,116 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[x ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/Callie A. Castillo* _____ **Date** April 27, 2026 _____

28

## CERTIFICATE OF SERVICE

I certify that on April 27, 2026, I electronically filed the foregoing with the Clerk of the court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and service will be accompanied by the CM/ECF system.

BALLARD SPAHR LLP


By: *s/Callie A. Castillo*
Callie A. Castillo, WSBA No. 38214
Erika O'Sullivan, WSBA No. 57556
Ballard Spahr LLP
1301 Second Avenue, Suite 2800
Seattle, Washington 98101
Telephone: 206.223.7000
Facsimile: 206.223.7107
castilloc@ballardspahr.com
osullivane@ballardspahr.com

*Attorneys for Defendants-Appellants/Cross-Appellees*

29